# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY.

### NOVEMBER TERM, 1900.

---

ROBERT P. LISTER and ESTHER G. SELBY, appellants,

*v.*

WILLIAM R. WEEKS et al., respondents.

[Filed November 19th, 1900.]

1. When the court of chancery has adjudged that a trust fund, invested in the stock of a manufacturing corporation, is in a precarious condition, and, if continued in such investment, there will result an immediate loss of income and a prospective diminution or loss of value of principal, and, under its power over trusts, has sanctioned and directed a sale of the stock and the transformation of the stock into money and other stock, it is unnecessary to consider and determine the power of the court to make compensation out of the *corpus* of the fund to *cestuis que trustent* entitled to the income for life, when there is nothing.in the proofs to indicate that the income of the life tenants from the transformed fund will be less than they would have received if the investment had been left unchanged.

2. Nor can the *cestuis que trustent* for life claim anything from the *corpus* of the fund, on the ground that they consented to the sale and asked the sanction of the court thereto in the expectation that they would receive something out of the *corpus*.

On separate appeals by Esther G. Selby and Robert P. Lister.

*Mr. Robert H. McCarter,* for Esther G. Selby.

*Mr. Chauncey G. Parker,* for Robert P. Lister.

*Mr. Charles L. Corbin,* for the respondents.

The opinion of the court was delivered by

MAGIE, CHANCELLOR.

Two appeals from a part of the decree of the court of chancery have been taken by Esther G. Selby and Robert P. Lister. They present the same question, and were properly argued together.

As we have not been furnished with the grounds upon which the decree below in the respect now appealed from was made. a brief statement of the pleadings and proofs seems necessary.

The original bill of complaint was filed by appellants against William R. Weeks and others, and it set forth, among other things, that appellants were the only children of Edwin Lister, deceased; that their father, by his last will and codicil thereto, had appointed William R. Weeks his executor, and had directed that his

"interest in the Lister Agricultural Chemical Works should remain in the hands of his executor in trust for the benefit of his children during their lifetime, and after their deaths to go to their children at their majority ;"

that the Lister Agricultural Chemical Works (which will here- after be called the Lister company) was a corporation of this state, and testator's interest therein was represented by three thousand five hundred and forty-four shares of stock, which was more than a majority of the stock; that Weeks, without obtaining the sanction of the chancellor, had improperly sold and transferred the stock of testator to a corporation named the American Agricultural Chemical Company (which will be here- after called the American company). The bill prayed, among other things, that such sale might be declared null and void,

and that the American company should be enjoined from asserting any rights under the transferred stock.

Upon filing the bill, an order to show cause, with a restraining order, was allowed, and afterwards it was brought to hearing upon the bill and answer filed by the defendants.

After the hearing the restraining order was continued to the final hearing of the cause, but with a proviso that it should not restrain the American company from returning or retransferring the stock to Weeks.

Thereafter appellants filed a supplemental bill, setting forth, among other things, that the stock in question had been returned and retransferred by the American company to Weeks, and that Weeks had paid back to that company the purchase-price. It further set forth facts which indicated that the best interest of the trust required the sale of the stock, and that they had consented to a sale to the American company, if approved by the court, for the price of $722,149.06 in cash and one thousand five hundred shares of the common stock of the American company, of the par value of $100 each. The prayer of the supplemental bill was that a sale at that price should be sanctioned by the court, and that the court should direct that the proceeds thereof should be paid to the trustee or to such person or persons as the court should direct; and it further prayed that the court should make such order for the compensation of the complainants, on an adjustment of the relative rights of the life tenants and remaindermen in the proceeds of said sale, as should be proper. Answers to the supplemental bill were filed, and the cause was brought to hearing before Vice-Chancellor Stevens. He advised a decree, in respect to the sale of the stock, substantially such as was prayed for, and upon an application for further directions, he advised a further decree, among other things, that the application of Robert P. Lister and Esther G. Selby to receive for their joint benefit the one thousand five hundred shares of the common stock of the American Agricultural Chemical Company, by way of compensation for their loss of income in the future on account of the conversion of the stock of the Lister Agricultural Chemical Works into money and the said stock, be denied. From this it would appear that appellants,

40

in the argument, had specifically asked that the common stock of the American company should be transferred to them

The decree, so far as it sanctioned and approved the sale of testator's stock, had not been appealed from. The sale has been carried out and the purchase-price has been paid over, according to the direction of the decree. Appellants have severally appealed from so much of the decree as has denied them relief by way of an allowance for their separate benefit out of the purchase-money accruing from the sale.

Appellants claim such allowance on two grounds. They first insist that the change of the investment of the trust fund will diminish the income to which, as tenants for life, they are entitled, and they are therefore entitled to compensation. They further insist that they gave their consent to the sale in the expectation that an allowance by way of compensation for diminished income would be made to them.

There was no testimony taken in the cause in respect to the probable diminution of appellants' income from the fund, other than that taken with respect to the advisability of making sale of testator's stock. It thus appeared that dividends upon that stock had, for some time, been declared at the rate of fifteen per cent. per annum, but that the last dividend at that rate had exhausted the earnings of the Lister company, and had been paid, at least in part, out of an accrued surplus. It also appeared that the competition of the proposed purchaser of the stock, which had already secured a very profitable contract which the Lister company had previously controlled, was likely to greatly diminish the earning power of that company, and consequently to reduce its dividends, if not wholly prevent the declaration of any dividend. It was doubtless upon this evidence that the court below was induced to sanction and approve the sale of testator's stock, and its decree to that effect must have proceeded upon the ground that it was judicious and prudent to transform the "interest" in the Lister company, which had been directed to be held in trust, into the money and stock which could be acquired by its sale, and that the amount so to be acquired was a fair equivalent of the value of the "interest" under the circumstances. It results that by such transformation, sanc-

tioned by the solemn act of the court, of which no complaint is made, that the money and stock has become the *corpus* of the trust fund, and represents the interest, not only of the appellants, who are entitled to its income for life, but of their children, to whom it will eventually go.

On behalf of the appellants it is argued that the court below had no power to sanction the sale of testator's stock in the Lister company, and transform the trust fund into money and other stock, without the consent, or against the objection, of appellants, who are *cestuis que trustent* for life, and without having adjudged that the transformation of the trust fund was for the best interests of the *cestuis que trustent* in remainder, who, it should be said, are infants. Assuming such to be the limitation of the power of the court, the exercise of that power cannot now be challenged by the appellants, for, by their supplemental bill, they formally gave their full consent thereto. They also set out in the supplemental bill the reasons why a sale of testator's stock was desirable, and even necessary, in these words:

"Your orators show that an emergency has arisen which calls for the sale of the said shares for the terms mentioned in the said agreement. The said Lister company is threatened with such disastrous competition from without, and such internal dissension, that it cannot in the future continue to do business with profit, and the value of its shares is likely in the near future to become of little or no account, and the trust fund is imperiled to the irremediable injury of your orators and the grandchildren of the said Edwin Lister, who are the beneficiaries entitled to share in said fund."

It is further evident, from the recitals of the decree, that it was adjudged that the interest of the *cestuis que trustent* in the Lister stock was in jeopardy, and that a change in the investment of the trust fund was required for the protection of the infants' interests therein.

Appellants have not appealed, and could not have successfully appealed, from the decree which they prayed, and which was made upon the grounds which they presented to the court in support of their prayer.

It is not necessary to consider or determine the power of the court of chancery to apportion losses or profits arising from the management of a trust fund between the tenants for life

and the tenants in remainder, for there is nothing in the cause to indicate that the income of the tenants for life will be hereafter reduced by the new investment of the trust fund. It is true they will not receive the dividend on the par value of the Lister stock at the rate of fifteen per cent. per annum, but, upon their appeal and the proofs, it clearly appears that their income was seriously imperiled, and that if the stock had been retained it would probably be reduced to very little, or nothing. Out of a judicious and prudent investment of the money received upon the sale they will be assured of an income. It results that no probable diminution of income in the future is so disclosed as to raise any question as to the equity of the appellants to resort to the *corpus* of the trust fund for compensation, and thereby reduce that fund to the injury of the infants entitled thereto in remainder.

It seems almost unnecessary to consider the argument advanced in behalf of appellants that they consented to the sale upon the express understanding that they were to receive the one thousand five hundred shares of the common stock of the American company for their own separate benefit. The proofs do not support this contention. The consent to the sale, which they set out in their supplemental bill, is contained in an agreement annexed thereto. It thereby appears that their consent was given upon an offer, in behalf of the American company, to purchase the shares of stock in the Lister company for cash and common stock of the American company, to be paid to the trustee or to such person as the court should direct. It is true that the complainants thereby also agreed, as between each other, to apply to the court of chancery for an adjustment of the rights between them and the *cestuis que trustent* in remainder, but such application could only invoke the equitable jurisdiction of the court over trust funds, and could not require the court to dispose of the application in their favor because of some unexpressed expectation in that respect.

It should be further said that the proofs show that the original draft of the agreement to purchase the Lister stock upon the consent of appellants and the approval of the court upon their application, expressly provided that the purchase-price for the

stock should be the cash sum of $722,149.06, and that one thousand five hundred shares of the common stock of the American company should be transferred to appellants in equal amounts and become their absolute property. Their counsel properly advised against the execution of the agreement as so drafted, and it was revised, and when executed it contained the provisions above set forth, whereby the purchase-price to be paid into the trust fund included both the cash sum and the common stock. There was, therefore, no agreement that appellants should be awarded the common stock in question, nor be made any allowance out of the *corpus* of the trust fund. If they had any expectation that an allowance would be made to them, it was obviously to be submitted to the determination of the court whether or not they had any equity thereto. The determination of the court was against them, and no error is found therein.

It results that the decree, in the respect complained of, was entirely correct, and must be affirmed.

*For affirmance*—The Chancellor, Chief-Justice, Van Syckel, Dixon, Collins, Fort, Garretson, Hendrickson, Bogert, Adams, Vredenburgh, Voorhees—12.

*For reversal*—None.